Bruce D. Greenberg
Jeffrey A. Shooman
LITE DEPALMA GREENBERG, LLC
Two Gateway Center, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com
jshooman@litedepalma.com


Gregory B. Collins (*pro hac vice* to be filed)
KERCSMAR & FELTUS PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com

*Attorneys for Plaintiffs ThermoLife International, LLC
and Ron Kramer*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, an Arizona limited liability company, RON KRAMER, an Arizona resident, | Case No. CV2011-051273 |
| Plaintiffs, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| ANTHONY CONNORS a/k/a ANTHONY ROBERTS and JANE DOE CONNORS, | |
| Defendants. | |

For their Complaint, plaintiffs ThermoLife International, LLC ("ThermoLife"), and its

President, Ron Kramer ("Kramer"), allege as follows:

1

## PARTIES, JURISDICTION, AND VENUE

1.      ThermoLife is a limited liability company organized and existing under the laws of the State of Arizona, with its principal place of business located in Phoenix, Arizona.

2.      Kramer is the President and Chief Executive Officer of ThermoLife.  He is a citizen of Arizona.

3.      Anthony Connors is a citizen of the state of New Jersey.  Under the alias Anthony Roberts, Mr. Connors formerly owned and operated the website "thesource *for underground steroid information*."  Mr. Connors previously titled this website "*the CNN of the steroid world*."  Mr. Connors' website is found and accessed world-wide at anthonyroberts.info.   For ease of reference, Mr. Connors will be referred to herein as "Defendant."

4.      Defendant and Jane Doe Connors are husband and wife.  At all times material hereto, Defendant was acting on behalf of and for the benefit of his marital community with defendant Jane Doe Connors.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants are of diverse citizenship and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this district when this action was originally instituted, and Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### I. KRAMER ESTABLISHES THERMOLIFE: AN INNOVATIVE SUPPLEMENT COMPANY COMMITTED TO SELLING SCIENTIFICALLY PROVEN PRODUCTS.

7.     Prior to founding ThermoLife, Kramer was a gym owner who had competed in bodybuilding and later promoted professional bodybuilding competitions for the International Federation of Bodybuilders.

8.     Between 1994 and 1997, Kramer opened a Gold's Gym in Santa Cruz, California.

9.     During his time as a bodybuilder, promoter, and gym owner, Kramer discovered that many supplements failed to meet any quality control standards.  Often supplements are spiked with hidden ingredients and/or labeled incorrectly.

10.     At the time ThermoLife was established, few supplements were clinically researched or field tested.  Even today, relatively few supplements have been proven to work as advertised.

11.     In 1998, Kramer founded ThermoLife in order to provide the public with quality proven supplements.  ThermoLife is committed to selling only the purest, most powerful and innovative products.

12.     By relying on supposedly proprietary formulas, supplement companies often hide the ingredients in their products from consumers.  Unlike other supplement companies, ThermoLife develops unique and novel products and formulas that it fully discloses to the public.  In this way, ThermoLife allows consumers to know exactly what products and raw materials they consume.

13.     Because—unlike other supplement companies—ThermoLife does not hide its formulas from consumers and the public, in order to keep competitors from copying its products

ThermoLife relies on the protections afforded inventors for unique and novel goods under United States patent law.

14.     ThermoLife has been awarded patents on 13 individual compounds. These patents protect ThermoLife's innovative and proven products from being copied by ThermoLife's competitors.

15.     By fully disclosing its formulas and relying on scientifically proven and protected formulas and ingredients, ThermoLife has taken a lead role in ending the deceptive business practices that have plagued the supplement industry.

16.     ThermoLife's President, Kramer, has also taken a lead role in exposing some of the deceptive business practices used by other supplement companies. ThermoLife consistently analyzes and tests other companies' supplements. When independent third party lab analysis reveals that the supplements tested are not as advertised Kramer has often posted this information on bodybuilding message boards in order to inform the unsuspecting consumer of these frauds/inaccuracies.

17.     Kramer is known on the internet by the name "Truth Speaker."

## II.     DEFENDANT ATTACKS THERMOLIFE AND KRAMER.

18.     Defendant previously owned and operated the website "thesource *for underground steroid information*," which was found at the internet address anthonyroberts.info.

19.     Although Defendant's website purported to expose lies and corruption in the supplement industry, the website was inordinately focused on ThermoLife and Kramer. The Defendant intentionally posted lies regarding ThermoLife and Kramer.

20.      Upon information and belief, Defendant is paid by supplement companies to promote their products.

21.     Defendant's website falsely attacked: ThermoLife's products; the raw materials included in ThermoLife's products; ThermoLife's patents; and ThermoLife's assertions of patent protection.

22.     Defendant has also attacked Kramer personally.

23.     After first being attacked by Defendant's website, in or about July 2009, Kramer contacted Defendant.  Kramer sought to engage Defendant in a conversation to discuss his comments about Kramer and ThermoLife.

24.     Despite receiving numerous requests from ThermoLife to discuss the information posted on his website, Defendant flatly refused to engage in any meaningful discussions about the false statements he has posted about ThermoLife and Kramer.

25.     Despite an open invitation from Kramer to discuss anything related to ThermoLife before he posted information about ThermoLife, Defendant did not contact Kramer to verify the accuracy of any of his posts.

26.     Defendant's website, anthonyroberts.info, was recently seized by one of Defendant's judgment creditors.

27.     On or about February 2013, Defendant began writing on a website named RomanoRoberts.com.mx. Since inception, this website had focused on ThermoLife and Mr. Kramer's activity in the dietary supplement community.

28.     On the website, RomanoRobert.com.mx, Defendant continues to recklessly post false information about: ThermoLife's products; the raw materials included in ThermoLife's products; ThermoLife's patents; ThermoLife's assertions of patent protection; and Kramer personally.

### A. Defendant Knowingly/Recklessly/Negligently Posts False Information About ThermoLife's Patents.

29.     Defendant has posted many false and defamatory posts about ThermoLife's U.S. Patent Application No. 10/904,029 (hereinafter "the Dicana Patent Application").

30.     ThermoLife first submitted the Dicana Patent Application to the U.S. Patent and Trademark Office on October 20, 2004, and has sold the product embodied by the Dicana Patent Application under the patent pending label since that date, including selling the product to leading supplement retailer BSN.

31.     In at least four separate and distinct internet posts, Defendant falsely asserted that the Dicana Patent would not and could not be issued:

    i.     On March 15, 2010, Defendant falsely stated that the patent "was rejected because, in laymens [sic] terms, someone else clearly thought of this first."

    ii.     On March 17, 2010, Defendant again posted false information about the Dicana Patent Application, noting that "it was not only a mediocre idea, but an unoriginal idea, thought up by unoriginal and mediocre minds."

    iii.     In the same March 15, 2010 post, Defendant also falsely stated that the product embodied by the Dicana Patent Application could no longer be sold under the claim "patent pending."

    iv.     On July 15, 2010, Defendant posted another false statement about the Dicana Patent Application, stating, "It's been rejected for the final time (again). And it will keep being rejected forever, as many times as ThermoLife applies."

32.     Each of these posts is provably false.  Defendant made these posts on the internet without a full and complete inquiry into the facts.  At a minimum, Defendant was reckless in failing to consult with ThermoLife before making these posts.

33.     In addition to these statements, the Defendant also falsely accused ThermoLife of engaging in the improper business practice of seeking patent protection for a product that ThermoLife knew would not receive a patent.

6

34. Defendant also contacted BSN, whom ThermoLife has sold the product embodied by the Dicana Patent Application under the patent pending label. In direct and tortious interference with ThermoLife's business relationship with BSN, Defendant falsely informed BSN that the Dicana patent would not issue and that ThermoLife has improperly sold the product under a patent pending label.

35. As a direct result of Defendant's improper actions, BSN terminated its relationship with ThermoLife.

36. Directly contrary to Defendant's statements on the internet and statements Defendant made directly to BSN about the Dicana Patent Application, on April 5, 2011, the U.S. Patent and Trademark Office issued the patent as U.S. Patent No. 7,919,533.

**B. Defendant Knowingly/Recklessly/Negligently Posts False Information About Kramer Accusing Kramer of Blackmail, Being the BALCO Informant, and Accusing Kramer of "Setting up his Friends."**

37. In addition to the false information that Defendant has posted on the internet about ThermoLife's patents, Defendant has also repeatedly attacked ThermoLife's founder, Kramer.

38. Defendant has falsely accused Kramer of being involved with one of the biggest scandals in the history of professional sports and performance enhancing drugs, Bay Area Laboratory Co-Operative ("BALCO"). In 2003, BALCO distributed a steroid that was not detectable at the time. Several athletes have been accused of using this steroid for a competitive advantage, including Olympians Tim Montgomery and Marion Jones. Professional baseball player Barry Bonds has also been accused of using the steroids that BALCO distributed.

39. On September 3, 2003, agents of the Internal Revenue Service, Food and Drug Administration, San Mateo Narcotics Task Force, and USADA conducted a search at the BALCO facilities.

40.     In a June 30, 2009 post, which still appeared on Defendant's website, Defendant falsely accused Kramer of being the source that led to the government's investigation of BALCO.   Defendant falsely stated:

> Honestly, although Patrick Arnold [an individual involved with BALCO] has likely done more damage to the nutritional industry than anyone, he's not the worst person in the industry. I'd have to reserve that honor for Ron Kramer – this is the BALCO snitch, who later moved on to the nutritional industry (he owns Thermolife), and has been caught trying to run a blackmail scam on nutritional companies.

41.     Then, in a later post, Defendant again falsely identified Kramer as the source that led to the government's investigation of BALCO.   In Defendant's December 29, 2009 post, Defendant included a drawing of Kramer depicted as a rat with a shirt that included ThermoLife's name.  This post created a false impression and cast Kramer in a false light.

42.     Also, in an August 31, 2008 post, Defendant knowingly, recklessly, and negligently labeled Kramer as a "rat," stating that Kramer "has spent the last several years setting up his friends in the bodybuilding community."

43.     In addition to above posts that were made on Defendant's former website, anthonyroberts.info, Mr. Roberts recently made similar posts on his new website RomanoRoberts.com.mx.  On May 8, 2013, Mr. Roberts posted an article titled, "Tony Serra Declaration that Ronald Kramer was Balco Informant (+Smoking Gun online article)."  A true and accurate copy of Mr. Roberts' May 8, 2013 post is attached as Exhibit 1.

44.     In the May 8, 2013 post, Mr. Roberts again falsely identified Mr. Kramer as the BALCO informant.

45.     On May 17, 2013, in another post directed at Mr. Kramer's and ThermoLife's actions, Mr. Roberts provided a link to the May 8, 2013.  That link was titled, "Being an informant."

46. Directly contrary to the statements included on Defendant's website, Kramer was not involved with BALCO.

47. Kramer did not provide any names of any person involved with BALCO to government authorities.

48. Directly contrary to Defendant's posts, Kramer has never "set up" any person for prosecution by government authorities.

49. The statements made by Defendant are provably false.

50. The statements by Defendant were fabricated by Defendant with the sole intent to harm Kramer's reputation

51. Defendant's defamatory statements are easily found using any Internet search engine.

52. These statements have caused damage to ThermoLife and Kramer in an amount not less than $1,000,000.00.

53. Defendant's statements have caused ThermoLife and Kramer to lose business and goodwill and have reduced ThermoLife's business expectancies.

54. Defendant's defamatory statements have also caused and continue to cause irreparable harm to ThermoLife's and Kramer's goodwill and business reputation.

55. Because Defendant's defamatory statements are still available on the internet and barring an order from this Court those statements will not be removed from the internet, injunctive permanent relief is necessary to prevent further irreparable harm to ThermoLife's and Kramer's business reputation and goodwill. To prevent further immediate and irreparable harm to ThermoLife and Kramer, a permanent injunction should enter requiring the Defendant and

those acting in concert with him to remove from the internet any information he has published about ThermoLife and Kramer.

56.    Further, Defendant has demonstrated that he will continue to publish false and defamatory information concerning Kramer and ThermoLife. The continued publication of false and defamatory information causes direct, immediate and irreparable harm to Kramer and ThermoLife. Accordingly, a permanent injunction should also enter barring Defendant and those acting in concert with him from posting information on the internet of and concerning Kramer and ThermoLife. At a minimum, in order to prevent further irreparable harm to Kramer and ThermoLife, the Court should enter a permanent injunction requiring the Defendant and those acting in concert with him to seek the Court's permission before posting any information on the internet of or concerning Kramer or ThermoLife.

## COUNT I

### (Defamation)

57.    ThermoLife and Kramer reallege and incorporate by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

58.    In posting the statements set forth above on anthonyroberts.info and RomanoRoberts.com.mx, Defendant has uttered defamatory statements of and concerning ThermoLife and Kramer.

59.    The defamatory statements uttered by Defendant concern ThermoLife's and Kramer's business reputation.

60.    The defamatory statements uttered by Defendant about ThermoLife and Kramer are false.

61.     Defendant knew his statements were false when made.    At a minimum, Defendant's statements were made with a reckless disregard for the truth of the matters asserted. Further, there can be no dispute that Defendant negligently posted the untrue statements about both ThermoLife and Kramer.

62.     Defendant uttered the defamatory statements set forth above in an effort to harm ThermoLife's and Kramer's business reputation and goodwill.

63.     Defendant's statements have harmed ThermoLife's and Kramer's business and goodwill.

64.     Defendant committed his acts against ThermoLife and Kramer, as alleged herein, fraudulently and maliciously and in conscious disregard of ThermoLife's and Kramer's rights, with evil mind and intent to injure ThermoLife and Kramer.

## COUNT II

### (Tortious Interference with Present and Prospective Business Relations)

65.     ThermoLife and Kramer reallege and incorporate by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

66.     ThermoLife and Kramer had business relationships and prospective relationships at the time Defendant posted defamatory statements on the internet.

67.     ThermoLife and Kramer had business relationships and prospective relationships at the time Defendant contacted ThermoLife's customers directly via registered mail to falsely inform them that the Dicana Patent Application had been denied and the Dicana patent would not issue.

68.     ThermoLife and Kramer had business relationships and prospective relationships at the time Defendant contacted ThermoLife's customers directly via registered mail to falsely

inform them they could no longer sell the product embodied by the Dicana Patent Application as marked "patent pending."

69.     Defendant's actions, as described above, were made with full knowledge and awareness of ThermoLife's and Kramer's business relationships and business expectancies.

70.     Defendant improperly interfered with ThermoLife's and Kramer's business relationships and business expectancies causing harm to ThermoLife and Kramer.

71.     Defendant committed his acts against ThermoLife and Kramer, as alleged herein, fraudulently and maliciously and in conscious disregard of ThermoLife and Kramer's rights, with evil mind and intent to injure ThermoLife and Kramer.

## COUNT III

### (Tortious Interference With Contract)

72.     ThermoLife and Kramer reallege and incorporate by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

73.     ThermoLife and Kramer had a business and contractual relationship with BSN at the time Defendant posted defamatory statements on the internet.

74.     Defendant contacted BSN, whom ThermoLife has sold the product embodied by the Dicana Patent Application under the patent pending label.  In direct and tortious interference with ThermoLife's business relationship with BSN, Defendant falsely informed BSN that the Dicana patent would not issue and that ThermoLife has improperly sold the product under a patent pending label.

75.     As a direct result of Defendant's improper actions, BSN terminated its relationship with ThermoLife.

76.     Defendant intentionally and improperly interfered with the contractual relationship between ThermoLife and BSN by inducing it or otherwise causing BSN to cease doing business with ThermoLife and Kramer.

77.     Defendant's actions, as described above, were made with full knowledge and awareness of ThermoLife's and Kramer's business relationship with BSN.

## PRAYER FOR RELIEF

WHEREFORE, ThermoLife and Kramer demand judgment in their favor and against Anthony Connors and Jane Doe Connors as follows:

A.     Awarding ThermoLife and Kramer damages on Count I in an amount to be proven at trial, but at a minimum $1,000,000.00, plus interest and costs of suit;

B.     Awarding ThermoLife and Kramer damages on Count II in an amount to be proven at trial, but at a minimum $1,000,000.00, plus interest and costs of suit;

C.     Awarding ThermoLife and Kramer damages on Count III in an amount to be proven at trial, but at a minimum $1,000,000.00, plus interest and costs of suit;

D.     Awarding ThermoLife and Kramer punitive damages in an amount sufficient to punish Defendants Anthony Connors and Jane Doe Connors and deter other similarly situated individuals from engaging in tortious conduct;

E.     An Order permanently enjoining Anthony Connors and Jane Doe Connors, which requires that they remove from the internet all posts authored by either Anthony Connors or Jane Doe Connors related to ThermoLife, Kramer, and every future business venture involving Kramer.

F.     An Order temporarily restraining, and preliminarily and permanently enjoining, Anthony Connors and Jane Doe Connors and all those persons in active concert or participation

with them, from making statements on the internet about ThermoLife, Kramer, or every future business venture involving Kramer. At a minimum, the Court should enter an order requiring Anthony Connors and Jane Doe Connors and all those persons in active concert or participation with them, from making statements on the internet about ThermoLife, Kramer, or every future business venture involving Kramer without first obtaining an order from this Court that the statements are not defamatory or an order that the statements are otherwise protected speech;

   G. For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action;

   H. Awarding prejudgment and post-judgment interest to the extent allowable by law; and

   I. Granting ThermoLife and Kramer such further and additional relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

   Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 19, 2013

**LITE DEPALMA GREENBERG, LLC**

By: */s/ Bruce D. Greenberg*
Bruce D. Greenberg
Jeffrey A. Shooman
Two Gateway Center, Suite 1201
Newark, NJ 07102
(973) 623-3000

**KERCSMAR & FELTUS PLLC**

Gregory Collins (*pro hac vice* to be filed)
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

## **CERTIFICATION PURSUANT TO RULE 11.2**

I, Bruce D. Greenberg, certify as follows:

1.      There are no actions related to this one currently pending.

2.      I recognize that if the foregoing is willfully false that I am subject to punishment.


Dated:  July 19, 2013
Newark, NJ

*/s/Bruce D. Greenberg*
Bruce D. Greenberg

# EXHIBIT 1






Search...

Navigation Menu

- Home
- About
- Anthony Roberts
- Featured
- John Romano
- Legal Documents
- Studies
- Uncategorized

- HomeHome
- AboutAbout
- Anthony RobertsAnthony Roberts
- FeaturedFeatured
- John RomanoJohn Romano
- Legal DocumentsLegal Documents
- StudiesStudies
- UncategorizedUncategorized



Home » Legal Documents » Tony Serra Declaration that Ronald Kramer was BALCO informant (+Smoking Gun online article)

Wed**08**

# Tony Serra Declaration that Ronald Kramer was BALCO informant (+Smoking Gun online article)

Posted by admin on May 8, 2013 in Legal Documents | 0 comments

Case 3:04-cr-00044-SI    Document 163    Filed 10/12/2004    Page 1 of 2

1   J. TONY SERRA, SBN 32639
2   ANNA LING, SBN 196023
    506 Broadway
3   San Francisco CA 94133
    Telephone 415/986-5591

4   Attorneys for Defendant
    GREG ANDERSON
5

6

7

8                   UNITED STATES DISTRICT COURT
9                  NORTHERN DISTRICT OF CALIFORNIA
                       SAN FRANCISCO DIVISION
10

11  UNITED STATES OF AMERICA,            CR 04-0044 SI

12          Plaintiff,                   DECLARATION OF COUN
                                         IN SUPPORT OF MOTIO
13      v.                               DISCLOSE GOVERNMENT
                                         INFORMANT PURSUANT
14  GREG ANDERSON, et al.                *UNITED STATES v. KI*

15          Defendants.                  [          ER SEAL]
                                 /
16

17      I, J. TONY SERRA, declare:

18      I am an attorney licensed to practice in the State

19  California and I am the lead and trial attorney for defe

20  herein.

21      I am informed and believe that the confidential in

22  in this case is Ronald Lance Kramer *aka* Ronald Green, DO

23  1/29/64.

24      I declare under penalty of perjury that the forego

25  true and correct, except as to matters therein stated on

26  information and belief, and as to those matters, I belie

27  to be true.  Executed on October 7, 2004, at San Francis

28 | California.

J. TONY SERRA

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591

Click to download as PDF (RonKramerSerraDec)





MANHUNT: Cops issue warrant for Ohio highway sniper suspect

MARCH 16--Meet Ronald Lance Kramer. The 40-year-old muscleman (and convicted felon) is the government informant who helped trigger the steroid investigation now engulfing scores of professional athletes, including baseball stars Barry Bonds, Jason Giambi, and Gary Sheffield. When state and federal investigators last year raided the offices of Balco, the San Francisco firm at the center of the steroid probe, search warrant affidavits detailed an investigation that was aided by a snitch for the San Mateo County Narcotics Task Force (NTF) who provided information about Balco's illegal steroid pipeline. That same source would also be quoted in a subsequent affidavit describing Bonds's personal trainer, Greg Anderson, as a well-known steroid dealer whose "clients include professional baseball players." Deemed a "reliable informant" by agents, the snitch had "been providing information to the NTF on other individuals associated with steroids in an attempt to earn a reduced sentence in his criminal case," according to the original search warrant affidavit. That informant was Kramer, who has since relocated from California to Arizona, where he runs a nutritional supplement business. In September 1997, Kramer was named in a 16-count criminal complaint charging him with the sale and distribution of an assortment of anabolic steroids. He eventually pleaded to a pair of felonies and was sentenced to six months in jail and placed on three years probation. In February 2000, Kramer was arrested again on steroid charges. In a bid to avoid prison, he "agreed to work with NTF in its efforts to infiltrate the local body-building community in regards to the manufacture, sale and/or use of anabolic steroids, growth hormones and other illegal substances," according to a subsequent court filing by a San Mateo prosecutor. In a bid to have Kramer's probation terminated, the felon's lawyer once claimed that his client "has worked his little fingers to the bone as an informant and general source of information for the Narcotics Task Force on steroid related offenses." (11 pages)

Join TSG's mailing list

Search The Smoking Gun.

✉ E-mail story to a friend.







## Advertisement

http://romanoroberts.com.mx/wp-content/uploads/2013/05/vpx.jpg

http://romanoroberts.com.mx/wp-content/uploads/2013/05/vpx.jpg



http://romanoroberts.com.mx/wp-content/uploads/2013/05/vpx.jpg

## Sponsors





## Categories

- Anthony Roberts
- Featured
- John Romano




[Legal Documents](#)
[Studies](#)

**Recent Posts**

[Mark Lobliner and Tiger Fitness' Craze Video](#)
[Muscle Maker Grill accused of racist hiring practices](#)
- [Progenex Force Review](#)
- [Liz Gaspari and her fake Twitter followers](#)
- [Deleted Bodybuilding.com post from Liz Gaspari's cousin](#)

**Sponsors**



Designed by [Elegant Themes](#) | Powered by [WordPress](#)

PDF-XChange
Click to buy NOW!
www.docu-track.com

PDF-XChange
Click to buy NOW!
www.docu-track.com