# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, an Arizona limited liability company, RON KRAMER, an Arizona resident,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHONY CONNORS a/k/a ANTHONY ROBERTS and JANE DOE CONNORS,<br><br>    Defendants. | Case No. 2:13-cv-4399 (KM) (MCA) |

## APPLICATION FOR ORDER TO SHOW CAUSE WHY CONNORS SHOULD NOT BE HELD IN CONTEMPT
## -AND-
## APPLICATION FOR ORDER TO SHOW CAUSE WHY INJUNCTION SHOULD NOT BE EXPANDED TO COVER FURTHER DEFAMATORY STATEMENTS

Jeffrey A. Shooman
**LITE DEPALMA GREENBERG, LLC**
Two Gateway Center, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jshooman@litedepalma.com

Gregory B. Collins (*pro hac vice pending*)
**KERCSMAR & FELTUS PLLC**
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com

*Attorneys for Plaintiff ThermoLife International, LLC and Ron Kramer*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................1

CONNORS' WILLFUL VIOLATIONS OF THE COURT'S ORDER.........................................2

MR. CONNORS SHOULD BE HELD IN BOTH CIVIL AND CRIMINAL CONTEMPT .........4

EXPANSION OF THE SCOPE OF THE INJUNCTION............................................................6

CONCLUSION...................................................................................................................8

# TABLE OF AUTHORITIES

**Case**

*Dusenbery v. United States,*
 534 U.S. 161, 169 n. 5 (2002) ......................................................................................... 5

**Statutes**

18 U.S.C. § 401 ...................................................................................................................... 6

18 U.S.C.A. § 402 .................................................................................................................. 6

**INTRODUCTION**

Plaintiffs ThermoLife International, LLC ("ThermoLife") and Ron Kramer ("Kramer') (together "Plaintiffs") filed this action against Defendant Anthony Connors in order to stop Mr. Connors from continuing to defame Plaintiffs on the Internet and to stop Mr. Connors' false statements. On March 17, 2014, this Court entered default judgment against Mr. Connors and entered an Order specifically prohibiting Mr. Connors from "[m]aking any false statement on the internet to the effect that Ron Kramer was the source or informant that led to the Bay Area Labs Co-Operative ("BALCO") investigation." (*See* Order (3/17/14), Dkt. 14.). That Order also held that "[a]ny statements currently posted to the internet that meet the description of paragraphs 1 or 2, above, shall be removed forthwith." (*Id.*). Mr. Connors is well aware of the Order. A copy of the Order, along with all filings in this matter, were mailed to Mr. Connors' Arizona counsel, with a demand that Mr. Connors remove the offending content from his website.[1] Mr. Connors has not complied with that request. Not only has Mr. Connors refused to remove the offending material, he continues to post material regarding ThermoLife and Mr. Kramer, much of which violates the Order.

Mr. Connors' conduct is hardly surprising as the Court cited several recent posts and considered them "evidence of the ongoing, indeed rather dogged, character of Defendant [Connors]' acts." (Memorandum Opinion (3/17/14), Dkt. 13 at 7.). The Court also noted that

---

[1] As the Court is aware, Plaintiffs previously brought suit against Mr. Connors in Arizona for defamation. That action was dismissed for a lack of personal jurisdiction over Mr. Connors. After that lawsuit was dismissed, Plaintiffs refiled their claim here, Mr. Connors' home state. A copy of the cover letter that counsel sent to Mr. Connor's Arizona counsel is attached as Exhibit K. But there should be no dispute that Mr. Connors was aware of the Order almost as soon as it was issued. Mr. Connors website frequently displaces Court filings that are filed in both Federal and State Court. These filings are very likely downloaded from online Court access cites, like PACER. It is no leap of faith to conclude the Mr. Connors has followed this entire action on PACER.

Mr. Connors "has ignored this lawsuit and appears poised to continue his actions . . . ." (Dkt. 13 at 10.) For these reasons, the Court "retain[ed] jurisdiction to enforce or modify this injunction." (Dkt. #14 at 2.) In order to enforce the injunction, Plaintiffs apply to this Court for an Order to Show Cause Why Mr. Connors Should Not be Held in Contempt for his utter disregard of the Court's injunction (the "Contempt Order"). Mr. Connors' violations of the Order constitute both civil and criminal contempt. As a remedy for the civil contempt, the Court should order and require Mr. Connors to immediately comply with the Order by removing the offending material from his website. The Court should impose any reasonable sanction to induce Mr. Connors' compliance. As a remedy for criminal contempt, the Court should impose an appropriate sanction for his willful disobedience of the Court's Order.

In addition, Mr. Connors has posted several offensive and defamatory posts regarding Plaintiffs. One in particular shows Mr. Kramer driving a van that reads "Free Candy" and suggests that Mr. Kramer is trying to abduct children. These statements are clearly defamatory and would be covered in the scope of the Complaint. While Plaintiffs certainly can appreciate the Court limiting the scope of the injunction so as to avoid the prohibition against prior restraints, now that Mr. Connors has decided to publish his defamatory statements, the Court may expand the scope of the injunction to cover his continuing statements. Accordingly, Plaintiffs apply for an Order to Show Cause Why Injunction Should Not be Expanded to Cover Further Defamatory Statements (the "Expanded Scope Order").

**CONNORS' WILLFUL VIOLATIONS OF THE COURT'S ORDER**

This Court entered an injunction against Mr. Connors that prohibited him from "[m]aking any false statement on the internet to the effect that Ron Kramer was the source or informant that led to the Bay Area Labs Co-Operative ("BALCO") investigation." (*See* Order (3/17/14), Dkt.

14.). That Order also held that "[a]ny statements currently posted to the internet that meet the description of paragraphs 1 or 2, above, shall be removed forthwith." (*Id.*) As of the date of this Application, Mr. Connors has not removed any of the offending material from his website. That alone violates the Order. Despite his knowledge of the Order, Mr. Connors has continued to post new material that violates the Order.

For example, on March 26, 2014, Mr. Connors posted a new missive once again purporting to link Mr. Kramer to the BALCO scandal. (*See* Ex. A, printout of "Infographic: Bad Luck for Thermolife's Friends.")[2] On March 26, 2014, Mr. Connors also made a post calling Mr. Kramer a "government informant." (*See* Ex. B, printout of "The Dirty on Ron Kramer of Thermolife.")[3] On March 15, 2014, Mr. Connors uploaded a post that cites Mr. Kramer's alleged and unfounded "long history of far more disgusting charges [and] his multiple convictions related to steroid dealing, for which he agreed to become a government informant . . . ." (*See* Ex. C, printout of "Ron Kramer of Thermolife: On probation and making donations to the LAPD.")[4] On January 13, 2014, Mr. Connors labeled Mr. Kramer a "federal informant (rat)," linked to a previous post regarding Mr. Connors' allegations about the BALCO scandal, and included a crude cartoon of Mr. Kramer as a rat. (*See* Ex. D, printout of "Kramer Loses Again And Doesn't Go Down Alone.")[5] On January 12, 2014, Mr. Connors wrote that "with very little effort (as usual) I'm going to expose Ron "The BALCO Informant" Kramer, as a liar

---

[2] This material can be found at (http://romanoroberts.com.mx/infographic-bad-luck-for-thermolifes-friends/) but Plaintiffs have provided a screen capture because counsel suspects that the website may have an associated malware problem.
[3] This material can be found at (http://romanoroberts.com.mx/the-dirty-on-ron-kramer-of-thermolife/).
[4] This material can be found at (http://romanoroberts.com.mx/ron-kramer-of-thermolife-on-probation-and-making-donations-to-the-lapd/).
[5] This material can be found at (http://romanoroberts.com.mx/kramer-loses-again-and-doesnt-go-down-alone/).

(again, for the millionth time)." (*See* Ex. E, printout of "Thermolife loses against Gaspari: Kramer lies again.")[6]

In addition to these more recent posts, Mr. Connors still provides the content that formed the basis for the injunction. (*See* Ex. F, printout of "Tony Serra Declaration that Ronald Kramer was BALCO informant (+Smoking Gun online article)"; Ex. G, printout of "Thermolife V. SNAC.")[7].

**MR. CONNORS SHOULD BE HELD IN BOTH CIVIL AND CRIMINAL CONTEMPT**

Pursuant to Federal Rule of Civil Procedure 65, Mr. Connors is bound by the injunction. "Since the court retains jurisdiction of the person against parties restrained by an injunction, service of process is not a prerequisite to a contempt proceeding. Appropriate notice is all that is required." 19 Fed. Proc., L. Ed. § 47:164. "Actual notice" is "[n]otice given directly to, or received personally by, a party." *Black's Law Dictionary* 1164 (9th ed.2009); s*ee also* 66 C.J.S. Notice § 4 ("notice is regarded in law as actual when the person sought to be affected by it knows of the existence of the particular fact in question, or is conscious of having the means of knowing it."); 58 Am.Jur.2d, Notice § 4 ("The words 'actual notice' do not always mean in law what in metaphysical strictness they import. They more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain the ultimate facts. Notice is regarded as actual where the person charged with notice either knows the particular facts in question or is conscious of having the means to know them, even though such means have not been used.... Actual notice embraces

---

[6] This material can be found at (http://romanoroberts.com.mx/thermolife-loses-against-gaspari-kramer-lies-again/).

[7] This material can be found at (http://romanoroberts.com.mx/tony-serra-declaration-that-ronald-kramer-was-balco-informant-smoking-gun-online-article/ and http://romanoroberts.com.mx/thermolife-v-snac-2/).

those things that reasonably diligent inquiry and exercise of the means of information at hand would disclose." (footnotes omitted)). The Supreme Court has equated "actual notice" with "receipt of notice." *Dusenbery v. United States,* 534 U.S. 161, 169 n. 5 (2002).

Mr. Connors is well aware of the Order and simply chooses to ignore it. Accordingly, the Court may hold him in contempt. Importantly, "[t]he same conduct may be the basis for both criminal and civil contempt, and the same sanctions (i.e., fine and imprisonment) may be imposed for both criminal and civil contempt."§ 703 Distinction from Civil Contempt, 3A Fed. Prac. & Proc. Crim. § 703 (4th ed.). "[W]hen an injunction has been violated, civil contempt remedies are available to provide compensation or other remedial relief for the party for whose benefit the injunction was entered, and criminal contempt penalties may be imposed, where appropriate, to punish the violation and vindicate the court's authority." 7A Fed. Proc., L. Ed. § 17:2. "The purpose of civil contempt is remedial or compensatory, while the purpose of criminal contempt is punitive." § 703 Distinction from Civil Contempt, 3A Fed. Prac. & Proc. Crim. § 703 (4th ed.). "[T]he same sanctions (*i.e*., a fine and imprisonment) are imposed for civil contempt as well as criminal contempt, but in the former instance they are employed 'as coercive sanctions to compel the contemnor to do what the law made it his duty to do.'" *Id*.

Mr. Connors continues to violate the Order, denying Plaintiffs the benefits of the injunctive relief. Accordingly, the Court should hold him in civil contempt and compel him to obey the Order through either fines or imprisonment. As a remedy for civil contempt, Mr. Connors "carries, in the classic phrase, the 'keys to his prison,' and any punishment must end when the contempt is purged." *Id*. Importantly, Mr. Connors has made it clear that he will not obey the Order and cease his tortious behavior until he is coerced to do so. At the very least, civil contempt is essential to uphold justice.

In addition, Mr. Connors' conduct is willful and directly undermines the authority of this Court. "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401. Furthermore, "[a]ny person . . . willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States . . . by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by a fine under this title or imprisonment, or both." 18 U.S.C.A. § 402. Accordingly, the Court may hold Mr. Connors in criminal contempt and the same measures taken to coerce compliance with the Order may take a punitive nature. . . ."§ 703 Distinction from Civil Contempt, 3A Fed. Prac. & Proc. Crim. § 703 (4th ed.).

## EXPANSION OF THE SCOPE OF THE INJUNCTION

In its Memorandum Opinion, the Court held, "I nevertheless consider the potential negative consequences of enjoining future statements." (Dkt. 13 at 8.) The Court also was "faced with the challenge of providing relief to Plaintiffs that is not overbroad and does not unduly burden First Amendment rights." (*Id*. at 10.) Plaintiffs respect the position the Court took and know that the Court's position was not taken lightly. But because Mr. Connors has continued to post material about Plaintiffs, many of his defamatory statements are no longer prospective possibilities but have become intolerable realities. For example, on October 31, 2013, Mr. Connors posted a photoshopped picture of Mr. Kramer driving a van emblazoned with the words, "FREE CANDY" under the heading "Happy Halloween From John Romano and Anthony

Roberts." (*See* Ex. H, printout of "Happy Halloween From John Romano and Anthony Roberts.")[8]. Mr. Connors' clear intention is to imply that Mr. Kramer is a danger to children. This is a baseless, pernicious, and defamatory message which was disseminated widely.

In addition, Mr. Connors has repeatedly published false statements about ThermoLife's patented ingredient Creatine Nitrate. Mr. Connors alleges that the FDA has determined that Creatine Nitrate is unsafe and is illegal to sell. The FDA has done nothing of the sort. While it determined that the information ThermoLife provided on a New Dietary Identification (NDIN) form was insufficient to evaluate ThermoLife's application, the FDA did not deem the product illegal or force ThermoLife to stop selling it. Yet Mr. Connors posts misinformation and distorts the facts. For example, on December 21, 2013, Mr. Connors created a post discussing a recent USA Today article and claims that the author has an "interest in protecting Ronald Lance Kramer and his company, Thermolife International." (*See* Ex. I, printout of "Alison Young: Journalism Shell Game.")[9]. Mr. Connors alleges that the author ignores that "the FDA prohibited the marketing of [ThermoLife's creatine nitrate] in no uncertain terms . . . ." (*Id.*) This is untrue and unfounded and damages ThermoLife's business. He made similar statements in a post on November 21, 2013. (*See* Ex. J, printout of "Thermolife's Creatine Nitrate: FDA prohibits sale under 21 U.S.C. 331(a) and (v).")[10]

Accordingly, Plaintiffs ask this Court for an expansion of the scope of the injunction to cover any statement that Mr. Kramer is somehow a danger to children or false statements regarding Creatine Nitrate.

---

[8] This material can be found at (http://romanoroberts.com.mx/happy-halloween-from-john-romano-and-anthony-roberts/).
[9] This material can be found at (http://romanoroberts.com.mx/alison-young-journalism-shell-game/).
[10] This material can be found at (http://romanoroberts.com.mx/thermolifes-creatine-nitrate-fda-prohibits-sale-under-21-u-s-c-331a-and-v/).

## CONCLUSION

Mr. Connors has demonstrated a complete and utter lack of respect for this Court and its orders. As the Court anticipated, he continues to maintain defamatory material on his website and has continued to post new material. The Court should use it contempt powers to enforce the injunction and coerce Mr. Connors' cooperation. In addition, the Court make a limited expansion of the injunction to cover Mr. Connors' new lies about Plaintiffs.

Dated: April 25, 2014 **LITE DEPALMA GREENBERG, LLC**

*/s/ Jeffrey A. Shooman*
Jeffrey A. Shooman
Two Gateway Center
Suite 1201
Newark, NJ 07102
(973) 623-3000

*Counsel for Plaintiffs*